# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

**MONIQUE MARIE LAFONTAINE**          **CIVIL ACTION**

**VERSUS**          **NO. 20-3458-WBV-DPC**

**MASSACHUSETTS MUTUAL LIFE**          **SECTION: D (2)**
**INSURANCE CO.**

## ORDER AND REASONS

Before the Court is Massachusetts Mutual Life Insurance Company's Motion for Judgment on the Pleadings.[1]  Monica LaFontaine did not timely file an opposition brief, despite the Court granting her two continuances to do so.[2]  As such, the Motion is unopposed.  After careful consideration of Massachusetts Mutual's memorandum and the applicable law, the Motion is **GRANTED.**

## I.     FACTUAL AND PROCEDURAL BACKGROUND

This case arose out of a dispute over the interpretation of a disability income insurance policy. Monica LaFontaine ("LaFontaine") acquired the disability policy (the "Policy") from Massachusetts Mutual Life Insurance Company ("Mass Mutual") in 2003.[3]  In 2018, LaFontaine tendered a claim under the Policy for Partial Disability.[4]  Mass Mutual declared LaFontaine Partially Disabled as of November 15,

---

[1] R. Doc. 20.

[2] R. Docs. 23, 26.  LaFontaine requested a third extension of time, R. Doc. 29, which the Court denied. R Doc. 38.  Prior to the Court's ruling on LaFontaine's request for a third extension of time, LaFontaine impermissibly filed a Response to the instant Motion.  R Doc. 34.  The Court struck her Response from the record.  R Doc. 38.

[3] R. Doc. 1-2 at ¶ 7.

[4] *Id.* at¶ 8.  Capitalized terms herein reflect defined or identified Policy terms.  Under the Policy, "Partially Disabled" is defined as follows: "The Insured is Partially Disabled if he/she: is suffering a current Disability; is working at his/her Occupation or another occupation; has a Loss of Income of at

2017.[5]  In 2019, LaFontaine tendered a claim under the Policy for Total Disability.[6] Mass Mutual, via an August 9, 2019 letter from claims examiner Julie Enriquez, declared LaFontaine Totally Disabled as of May 15, 2019.[7]  Mass Mutual started paying Total Disability benefits in mid-August 2019 after a 90-day Waiting Period.[8]

The parties do not dispute that in the first year of her Total Disability, LaFontaine's "Total Disability Benefit" was "$3,820 Monthly."[9]  LaFontaine's annual premium for Total Disability Benefits was $1,478.28.[10]   In addition to disability benefits, LaFontaine also acquired a Cost-of-Living-Adjustment Rider ("COLA Rider").  LaFontaine's annual premium for the COLA Rider was $260.89.[11]  The COLA Rider operated to "increase the amount of Disability benefits payable to the Recipient of Benefits [LaFontaine] under the Policy and select Riders shown in Policy Specifications."[12]   The COLA Rider's calculation methodology is the center of the instant dispute.

---

least 20% of Predisability Income; can show a Demonstrated Relationship between the Loss of Income and the current Disability; and is under a Doctor's Care." R. Doc. 1-3 at p. 16.

[5] R. Doc. 1-2 at ¶ 7; R. Doc. 8-1 at p. 62.

[6] R. Doc. 1-2 at ¶¶ 8-9; R. Doc. 8-1 at p. 62.  Under the Policy, "Total Disability" is defined as follows: "The occurrence while this Policy is In Force of a condition caused by a Sickness or Injury, in which the Insured cannot perform the main duties of his/her Occupation and is not working at any other occupation for which he/she is, or becomes, qualified by reason of education, training, or experience and which provides him/her with substantially the same earning capacity as his/her former earning capacity prior to the start of the disability.  The insured must be under a Doctor's Care." R. Doc. 1-3 at p. 8.

[7] R. Doc. 1-2 at ¶ 9.

[8] *Id.* at ¶ 10.  Under the Policy, "Waiting Period" is defined as follows: "The period immediately following the start of Disability during which benefits do not accrue." R. Doc. 1-3, p. 8.

[9] R. Doc. 1-3 at p. 5.

[10] *Id.*

[11] *Id.*

[12] *Id.* at p. 14.

Soon after being declared Totally Disabled, LaFontaine sought to clarify the amount of benefits she would receive throughout the life of the Policy.[13]  According to the Policy:

> The increases to the benefits will be computed once each 12 months of Disability.  If requirements for eligibility have been met, the increases to the Monthly Benefit payments for the next 12 months will be computed by multiplying each Monthly Benefit payable by a percentage.[14]

The Policy further specifies the percentages used in the calculation, as set forth in the table below:[15]

| Year of Disability | Percentage | Year of Disability | Percentage |
|---|---|---|---|
| 2 | 3.0% | 9 | 26.7% |
| 3 | 6.1% | 10 | 30.5% |
| 4 | 9.3% | 11 | 34.4% |
| 5 | 12.6% | 12 | 38.4% |
| 6 | 15.9% | 13 | 42.6% |
| 7 | 19.4% | 14 | 46.9% |
| 8 | 23.0% | 15 | 51.3% |

The parties offer competing interpretations of the COLA Rider.  Under LaFontaine's interpretation, the COLA Rider is calculated by multiplying the percentage listed in the table by the monthly benefit payable the year immediately prior to the current year of disability.  For example, in Year 2, the original $3,820 monthly benefit multiplied by 3% would yield a monthly benefit of $3,934.60. In Year

---

[13] R. Doc. 1-2 at ¶¶ 19-20.  Under the COLA Rider, Mass Mutual agreed to "make increases to the Monthly Benefit based on the Monthly Benefit for this Rider shown in the Policy Specifications . . . ." R. Doc. 1-3 at p. 14.
[14] R. Doc. 1-3 at p. 14.
[15] *See id.* (Full table).

3, the monthly benefit paid in Year 2 ($3,934.60) would be multiplied by 6.1%, yielding a monthly benefit of $4,174.61. In Year 4, $4,174.61 would multiplied by 9.3%, yielding $4,562.85, and so on.

Under Mass Mutual's interpretation, the COLA Rider is calculated by multiplying the percentage listed in the table by the original (Year 1) monthly benefit. For example, in Year 3, the monthly benefit would be $3,820 x 6.1% or $4,053.02. In Year 4, the monthly benefit would be $3,820 x 9.1% or $4,167.62, and so on. In other words, the percentages would increase annually as in the table, but the Monthly Benefit amount to be  multiplied would remain at the original $3,820 Monthly Benefit.

LaFontaine alleges Mass Mutual's agent, Xavier Angel, confirmed the accuracy of her methodology and consulted with two "higher-ups" at Mass Mutual who also confirmed its accuracy.[16]  Mass Mutual denies this allegation.[17]  In Year 3 of her disability, Mass Mutual calculated LaFontaine's monthly benefit as $4,053.02 ($3,820 x 6.1%).[18] This is less than LaFontaine was allegedly expecting.[19]

On or about November 24, 2020, Plaintiff filed a Petition for Declaratory Judgment, Reformation, Estoppel, Waiver, Unfair Practices, and Statutory Penalties against Mass Mutual in the 24th Judicial District Court for the Parish of Jefferson, Louisiana.[20]  Lafontaine's first cause of action seeks a declaratory judgment

---

[16] R. Doc. 1-2 at ¶ 20.
[17] R. Doc. 13 at p. 6, ¶ 20.
[18] R. Doc. 1-2 at ¶ 24.
[19] R. Doc. 1-2 at ¶ 25.
[20] R Doc. 1-1.

regarding the interpretation of "Amount of Monthly Benefit Increases" in the COLA Rider.[21]   LaFontaine's second cause of action relates to the dates Mass Mutual "indexed," or, calculated, the annual benefit increase under the COLA Rider.[22]   Via letter dated September 18, 2019 (the "September 18, 2019 letter"), Mass Mutual agent Julie Enriquez stated, "Your [LaFontaine's] base policy monthly benefit has increased in accordance with the Cost of Living Rider (COLA) effective January 16, 2019."[23]   Subsequently, Mass Mutual "corrected the indexing date to March."[24]

Alternatively, LaFontaine seeks equitable relief in the form of reformation, waiver, and/or estoppel.[25]   LaFontaine alleges that, "reformation of the Disability Policy occurred by the mutual error of Ms. LaFontaine and MassMutual, and/or by the fraud of MassMutual."   LaFontaine also seems to allege that Mass Mutual waived its rights under the Policy based on the representations made in the September 18, 2019 letter.[26]   LaFontaine then alleges that Mass Mutual should be estopped from enforcing the terms of the Policy because "MassMutual made representations to Ms. LaFontaine, upon which she relied."[27]   Finally, LaFontaine seeks the imposition of statutory penalties under La. R.S. 22:1964, La. R.S. 22:1821, and La. R.S. 22:1973.[28]

Mass Mutual removed the case to this Court on December 23, 2020, asserting diversity jurisdiction under 28 U.S.C. § 1332.[29]   On February 25, 2021, Mass Mutual

---

[21] R. Doc. 1-2 at ¶¶ 12-26.
[22] R. Doc. 1-2 at ¶¶ 28-32.
[23] R. Doc. 8-1 at p. 62.
[24] R. Doc. 1-2 at ¶ 31.
[25] R. Doc. 1-2 at ¶¶ 33-36.
[26] R. Doc. 1-2 at ¶ 35.
[27] R. Doc. 1-2 at ¶ 36.
[28] R. Doc. 1-2 at ¶¶ 37-39.
[29] *See*, R. Doc. 1 (emphasis in original).

filed the instant Motion for Judgment on the Pleadings, asking the Court to dismiss with prejudice Plaintiff's Petition under Fed. R. Civ. P. 12(c).[30]  In its Motion, Mass Mutual argues that the Policy is not ambiguous; rather, "The policy specifies that these [COLA Rider] increases are calculated based on the *Monthly Benefit*, which itself is clearly identified in the policy."[31]   Mass Mutual also argues that the September 18, 2019 letter contained an erroneous calculation made by its agent, but that the letter cannot alter or supersede the plain language of the Policy.[32]   Mass Mutual further asserts that LaFontaine's claim for reformation is inapposite because that doctrine applies to errors in the creation of contracts, whereas here, LaFontaine alleges "*ex post* error."[33]

Mass Mutual argues that LaFontaine's claim for waiver also fails because LaFontaine has alleged that Mass Mutual indexed benefit increases according to Mass Mutual's interpretation of the Policy.  Therefore, Mass Mutual clearly did not waive any right.[34]   Mass Mutual asserts that LaFontaine's estoppel claim fails because, under Louisiana law, estoppel cannot be used to expand insurance coverage, and because parol evidence is inadmissible in a claim for estoppel if the contract is unambiguous.[35]  Mass Mutual further asserts that LaFontaine's claims for bad faith under La. R.S. 22:1821 and La. R.S. 22:1973 fail because, under Louisiana law, a valid breach of contract claim is a condition precedent to the recovery of statutory

---

[30] R. Doc. 20.
[31] R. Doc. 20-1 at p. 1.
[32] R. Doc. 20-1 at p. 4.
[33] R. Doc. 20-1 at p. 12.
[34] R. Doc 20-1 at pp. 12-13.
[35] R. Doc. 20-1 at pp. 13-14.

penalties.[36]   Finally, Mass Mutual argues that LaFontaine's claim under La. R.S. 22:1964 fails because that statute does not recognize private rights of action.[37]

As previously discussed, the Motion is unopposed.  On June 15, 2021, the Court issued an Order staying discovery pending the resolution of the instant Motion and LaFontaine's Motion for Partial Summary Judgment.[38]

## II.   Legal Standard

### A.  Rule 12(c) Standard

"A motion brought pursuant to Fed. R. Civ. P. 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts."[39]  "The [district] court may dismiss a claim when it is clear that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."[40] "The central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief."[41]  According to the Fifth Circuit, "Pleadings should be construed liberally, and judgment on the pleadings is appropriate only if there are no disputed issues of fact and only questions of law remain."[42]

---

[36] R. Doc. 20-1 at p. 14.

[37] *Id.*

[38] R. Doc. 53; *See,* R. Doc. 46.

[39] *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (quoting *Hebert Abstract Co. v. Touchstone Properties, Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (internal quotation marks omitted)).

[40] *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam) (citing *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990)).

[41] *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (quoting *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001)).

[42] *Hughes*, 278 F.3d at 420 (citing *Voest-Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887, 891 (5th Cir. 1998)).

Courts evaluate a motion for judgment on the pleadings brought under Fed. R. Civ. P. 12(c) using the same standard as a motion to dismiss for failure to state a claim.[43]   To overcome a defendant's motion to dismiss, a plaintiff must plead a plausible claim for relief.[44]   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[45]   The Court, however, does not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.[46] But, no matter the factual content, a claim is not plausible if it rests on a legal theory that is not cognizable.[47]   In ruling on a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c), the district court is confined to the pleadings and must accept all allegations contained therein as true.[48]

### B. Construction of Insurance Policies

"A federal court sitting in diversity follows the choice of law rules of the state in which it sits."[49]   "Under the Louisiana choice-of-law regime, the law of the state where the insurance contract was issued and executed generally governs the interpretation of that contract."[50]   The Policy at issue in this case was issued and

---

[43] *Gentilello v. Rege*, 627 F.3d 540, 543-44 (5th Cir. 2010) (citing *MySpace*, 528 F.3d at 418).

[44] *Edionwe v. Bailey*, 860 F.3d 287, 291 (5th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

[45] *Edionwe*, 860 F.3d at 291 (quoting *Aschroft*, 556 U.S. at 678, 129 S.Ct. 1937) (internal quotation marks omitted).

[46] *Gentilello*, 627 F.3d at 544 (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

[47] *Shandon Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010) (per curiam).

[48] *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001).

[49] *Sorrels Steel Co. v. Great Sw. Corp.*, 906 F.2d 158, 167 (5th Cir. 1990), *opinion amended on denial of reh'g*, 914 F.2d 695 (5th Cir. 1990) (citing *FMC Fin. Corp. v. Murphree*, 632 F.2d 413, 418 (5th Cir. 1980)).

[50] *Woodfield v. Bowman*, 193 F.3d 354, 360 (5th Cir. 1999).

executed in Louisiana.[51]  Accordingly, Louisiana law governs the interpretation of the Policy.

"Under Louisiana law, insurance policies are subject to the same interpretative rules as other contracts."[52] In construing an insurance contract, the Court must "determine the parties' common intent" with reference to the text of the contract.[53] "An insurance contract is to be construed as a whole and each provision in the contract must be interpreted in light of the other provisions."[54]  "If a policy provision is ambiguous and is subject to two or more reasonable interpretations, it is generally construed against the insurer."[55]  "Ambiguity will also be resolved by ascertaining how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered."[56]

"An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion."[57]  Instead, a court should "interpret the policy to fulfill the reasonable expectations of the parties in the light of the customs and usages of the industry."[58] This is known as the

---

[51] R. Doc. 1-3 at p. 37.

[52] *Sussmann v. Ameritas Life Ins. Corp.*, Civ. A. No. 17-2939, 2018 WL 705875, at *2 (E.D. La. Feb. 5, 2018) (citing *Arceneaux v. Amstar Corp.*, 2015-0588, p. 12 (La. 9/7/16), 200 So. 3d 277, 286).

[53] *Id.* (citing *Sims v. Mulhearn Funeral Home, Inc.*, 2007-0054, p. 7 (La. 5/22/07), 956 So. 2d 583, 589).

[54] *Sims,* 956 So. 2d at 589; La. Civ. Code art. 2050.

[55] *Sims* at 589-90.

[56] *Hous. Auth. of New Orleans v. Landmark Ins. Co.*, Civ. A. No. 15-1080, 2016 WL 772649, at *3 (E.D. La. Feb. 29, 2016) (citing *Breland v. Schilling*, 550 So. 2d 609, 610 (La. 1989)).

[57] *Hous. Auth. of New Orleans,* Civ. A. No. 15-1080, 2016 WL 772649 at *3 (citing *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So. 2d 759, 763 (La. 1994)).

[58] *Trinity Indus., Inc. v. Ins. Co. of N. Am.*, 916 F.2d 267, 269 (5th Cir. 1990).

reasonable expectations doctrine.[59] "The determination of whether a contract is clear or ambiguous is a question of law."[60]

## III.   ANALYSIS

### A. LaFontaine's Request for Declaratory Judgment Regarding the Interpretation of "Amount of Monthly Benefit Increases" in the COLA Rider.

LaFontaine's central claim is that the Policy is ambiguous regarding the proper calculation of the COLA Rider.  Under the COLA Rider, Mass Mutual agreed to increase the Monthly Benefit "based on the Monthly Benefit for this Rider shown in the Policy Specifications . . . ."[61]  The benefit increase is calculated "by multiplying each Monthly Benefit payable by a percentage."[62]  Thus, the Court must determine whether the Policy is ambiguous regarding the monthly benefit used to calculate the COLA Rider.

The Court finds that the COLA Rider is not ambiguous.  It clearly provides that, "We [Mass Mutual] will make increases to the Monthly Benefit based on the Monthly Benefit for this Rider shown in the Policy Specifications . . . ."[63]  The "Monthly Benefit for this Rider shown in the Policy Specifications" is unambiguously $3,820.  On page 4 of the Policy, which contains the Policy Specifications, the Policy

---

[59] *Hous. Auth. of New Orleans,* Civ. A. No. 15-1080, 2016 WL 772649 at *4 (citing *Louisiana Ins. Guar. Ass'n*, 630 So. 2d at 764.

[60] *Louisiana Ins. Guar. Ass'n*, 630 So. 2d at 764 (internal citations omitted).

[61] R. Doc. 1-3 at p. 14.

[62] *Id.*

[63] *Id.*

provides coverage for "Cost of Living: 3%."[64]   The "Benefit" listed for "Cost of Living 3%" coverage is "$3,820 Monthly."[65]

LaFontaine attempts to manufacture ambiguity in the Policy in two interrelated ways.  First, she argues that the phrase "*each* Monthly Benefit payable" in the COLA Rider refers to the monthly benefit paid by Mass Mutual the year prior.  She argues that the word "each" implies that the phrase "Monthly Benefit" does not refer to a single, fixed amount.  Second, LaFontaine argues that the phrase "Monthly Benefit" is not defined in the policy and is therefore "subject to reasonable interpretation."[66]

The Policy language contradicts LaFontaine's position.  The COLA Rider calculation methodology is not ambiguous.  First, the word "each" as used in "each Monthly Benefit payable" in the COLA Rider clearly refers to the fact that the Policy Specifications lists multiple Monthly Benefits.  For example, on pages 2-3 of the Policy, which contain the Policy Specifications, three "Monthly Benefit[s]" for "Cost of Living 3%" of $1,380, $1,060, and $1,380 accord with three succeeding "Coverage Date[s]" of October 27, 2003, December 27, 2005, and October 27, 2009, respectively.[67]  Thus, if Plaintiff became Totally Disabled in 2007, the COLA Rider would apply to "each Monthly Benefit payable," which would not include the third ($1,380) Monthly Benefit above that was not "payable" until October 27, 2009.

---

[64] R. Doc. 1-3 at p. 5.
[65] *Id.*
[66] R. Doc. 1-2 at ¶ 18.
[67] R. Doc. 1-3 at p. 3-4.

Likewise, the fact that "Monthly Benefit" is not defined in the Policy's definition section does not make the term ambiguous. The Fifth Circuit has held that, "The fact that a term is not defined in the policy itself does not alone make that term ambiguous."[68] Moreover, the Policy outlines various "Monthly Benefits" which applied under different circumstances and in ranging amounts. The term "Monthly Benefit" could not be defined because by its variability, it evades precise definition.

While the COLA Rider could have been more artfully drafted, the Court finds that it is not ambiguous. The phrase "by multiplying each Monthly Benefit payable by a percentage," as set forth in the COLA Rider, is not subject to more than one reasonable interpretation. The clear language of the COLA Rider indicates that it operates by multiplying a percentage by the Monthly Benefit "for this Rider shown in the Policy Specifications,"[69] which amount is stated as- $3,820.

LaFontaine's interpretation would "achieve an absurd conclusion"[70] by construing a cost-of-living adjustment rider, for which she paid a $260.89 annual premium, to net her millions of dollars. The Court must "determine the parties' common intent with reference to the text of the contract."[71] By the plain language of the Policy, the common intent of the parties was that Mass Mutual would adjust LaFontaine's Monthly Benefit to account for increased cost-of-living, not compound benefit increases such that LaFontaine would receive 5-figure Monthly Benefits

---

[68] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 207 (5th Cir. 2007).

[69] R. Doc. 1-3 at p. 14.

[70] *See Hous. Auth. of New Orleans v. Landmark Ins. Co.*, Civ. A. No. 15-1080, 2016 WL 772649, at *3 (E.D. La. Feb. 29, 2016).

[71] *Sussmann v. Ameritas Life Ins. Corp.*, Civ. A. No. 17-2939, 2018 WL 705875, at *2 (E.D. La. Feb. 5, 2018).

toward the end of the Policy's life.  The Court points to the title of the rider itself, "Cost of Living Rider," as support of this intent.[72]

As such, LaFontaine has failed to state a plausible claim for declaratory judgment regarding the proper interpretation of "Amount of Monthly Benefit Increases" provision in the COLA Rider in the Policy.

### B. LaFontaine's Request for Declaratory Judgment Regarding Mass Mutual's September 18, 2019 Letter.

LaFontaine's second claim relates to the proper date her benefit increases begin or "index."  Unlike her argument related to the COLA Rider calculation methodology, LaFontaine does not allege that the COLA Rider indexing methodology is ambiguous.  LaFontaine alleges only that Mass Mutual must honor the September 18, 2019 letter, which states that her Monthly Benefit would increase annually in January.[73]  In other words, regardless of what the proper indexing date is under the Policy, LaFontaine argues that Mass Mutual must honor the September 18, 2019 letter declaring that the index date is January.[74]

"When the language [of an insurance policy] is clear, the agreement must be enforced as written."[75]  LaFontaine does not allege the language of the Policy is unclear regarding the proper date of indexing.  Under the Policy, LaFontaine's benefit

---

[72] R. Doc. 1-3 at p.14.
[73] R. Doc. 1-2 at ¶¶ 27-32.
[74] The September 18, 2019 letter was attached to LaFontaine's Petition.  Accordingly, the Court may consider it when deciding a Motion for Judgment on the Pleadings. *See Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) ("When considering a motion to dismiss courts are generally limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.").
[75] *Adams v. Unione Mediterranea Di Sicurta*, 220 F.3d 659, 663 (5th Cir. 2000).

increases started to accrue after she was disabled for 12 months.[76]  Though Mass Mutual originally declared her Partially Disabled as of November 15, 2017,[77] LaFontaine did not reach 12 months of disability until February 15, 2019 – 15 months after Mass Mutual originally declared her Partially Disabled.  The additional three months result from the definition of "Partial Disability" in the Policy: "The insured is Partially Disabled if he/she . . . has a loss of income of at least 20% of Predisability Income."[78]  LaFontaine did not show 12 months of lost income until February 15, 2019.[79]  The September 18, 2019 letter indicates that from December 1, 2017 to December 31, 2017 and from October 16, 2018 to December 15, 2018, LaFontaine showed "No Qualifying Loss of Income."[80]  Under the plain language of the Policy, LaFontaine was not Partially Disabled during those three months.  Thus, without those three months, LaFontaine unambiguously reached 12 months of disability on February 15, 2019.

Notwithstanding the plain language of the Policy, LaFontaine argues Mass Mutual is bound by the September 18, 2019 letter that incorrectly stated that her COLA Rider benefits indexed in January 2019.  This argument contradicts the language of the Policy, the September 18, 2019 letter, and Louisiana law.  The Policy states that Mass Mutual's "agents cannot alter or modify any terms of this Policy."[81]  The September 18, 2019 letter likewise contains a disclaimer that, "[t]his summary

---

[76] R. Doc. 1-3 at p. 14.
[77] R. Doc. 1-2 at ¶ 8; R. Doc. 8-1 at p. 62.
[78] R. Doc. 1-3 at p. 16.
[79] R. Doc. 13-2 at p. 3.
[80] R. Doc. 8-1 at pp. 63-64.
[81] R. Doc. 1-3 at p. 12.

does not alter or supersede the terms of the contract . . . In the event of any conflict, omission or discrepancy, the contract terms will govern."[82]  Thus, it is clear from the Policy that Mass Mutual agents may not modify Policy terms, and the September 18, 2019 letter clearly states that it does not purport to modify the Policy terms.  Further, under Louisiana law, the September 18, 2019 letter cannot supersede the Policy.[83] As such, Lafontaine has failed to allege a plausible claim for declaratory judgment regarding the September 28, 2019 letter and the indexing date of her benefit increase.

### C. Reformation, Waiver, and Estoppel.

Alternatively, LaFontaine seeks equitable relief, which she contends "reach[es] the same result for which she seeks declaratory relief."[84]  LaFontaine seeks equitable relief in the form of reformation, waiver, and/or estoppel.  The Court will address each in turn.

#### i.  Reformation

"Reformation is an equitable remedy used to correct errors or mistakes in contracts."[85]  "An insurance policy 'may be reformed if, through mutual error or fraud, the policy as issued does not express the agreement of the parties.'"[86]  "The party seeking reformation has the burden to establish a mutual error in the creation of a

---

[82] R. Doc. 8-1 at p. 65.

[83] *See Brown v. Phoenix Life Ins. Co.*, 843 Fed.Appx. 533, 541 (5th Cir. 2021); *see also Monceaux v. Monumental Life Ins. Co.*, Civ. A. No. 10-0147, 2011 WL 400342, at *5 (W.D. La. Feb. 1, 2011) ("the representations of an agent cannot enlarge or extend coverage beyond what is provided for in the policy.").

[84] R. Doc. 1-2 at ¶ 32.

[85] *Am. Elec. Power Co. v. Affiliated FM Ins. Co.*, 556 F.3d 282, 287 (5th Cir. 2009) (quoting *WMC Mortg. Corp. v. Weatherly*, (La. App. 3 Cir. 6/13/07); 963 So. 2d 413, 416) (internal quotation marks omitted).

[86] *Am. Elec. Power Co.*, 556 F.3d at 287 (quoting *Samuels v. State Farm Mut.*, 2006-0034, p. 6-7 (La. 10/17/06); 939 So. 2d 1235).

contract. Parole evidence is admissible to establish such a mutual error, but not to create ambiguity in the meaning of an intended term"[87]   "[W]hen a party seeks to reform a provision 'to provide coverage for a substantially different and greater risk than expressly covered, the party must demonstrate a mutual error by clear-and-convincing evidence.'"[88]

LaFontaine appears to misunderstand the meaning of "reformation" under Louisiana law.  LaFontaine alleges in her Petition that "Reformation of the Disability Policy occurred by the mutual error of Ms. LaFontaine and Mass Mutual, and/or by the fraud of Mass Mutual."[89]   LaFontaine's reformation claim fails because LaFontaine does not allege any "mutual error or fraud" in the *creation* of the Policy. Instead, LaFontaine merely asserts she is entitled to reformation because "Mass Mutual made promises in its September 18, 2019 letter, which it must honor."[90]  Such conclusory assertions fail to state a plausible claim for reformation.

Moreover, LaFontaine's factual allegations are insufficient to allege mutual error or fraud.  The September 18, 2019 letter is parole evidence, which is "admissible to establish . . . mutual error, but not to create ambiguity in the meaning of an intended term."[91]  Unfortunately for LaFontaine, the September 18, 2019 letter was written in 2019.  Putting aside the fact that both the letter and the Policy unequivocally state that Mass Mutual agents cannot modify or alter the Policy, the

---

[87] *Am. Elec. Power Co.*, 556 F.3d at 287 (citing *Samuels*, 2006-0034, 939 So. 2d at 1240) (internal citation omitted; footnote omitted).
[88] *Richard v. Anadarko Petroleum Corp.*, 850 F.3d 701, 712 (5th Cir. 2017) (quoting *Wilcox v. Wild Well Control, Inc.*, 794 F.3d 531, 541 (5th Cir. 2015)).
[89] R. Doc. 1-2 at ¶ 34.
[90] *Id*. at ¶ 34.
[91] *Am. Elec. Power Co.*, 556 F.3d at 287.

September 18, 2019 letter cannot possibly establish a mutual error in the *creation* of a contract because it was written 16 years after the Policy went into effect in 2003.[92]

> ii.   <u>Waiver</u>

LaFontaine's waiver claim similarly fails as a matter of law.   LaFontaine alleges that Mass Mutual waived its rights under the Policy based on the September 18, 2019 letter.[93]   As an initial matter, LaFontaine's waiver claim is undermined by La. R.S. 22:879, which provides that:

> None of the following acts by or on behalf of an insurer shall be deemed to constitute a waiver of any provision of a policy or of any defense of the insurer:
>
> . . .
>
> (2) Providing forms for reporting a loss or claim, for giving information relative thereto.[94]

LaFontaine's waiver claim is based, in large part, on the September 18, 2019 letter. To the extent her waiver claim is based on Mass Mutual "giving information relative" to her loss or claim, it fails as a matter of law.

Further, "In Louisiana, waiver is "the intentional relinquishment of a known right, power or privilege."[95]   "Waiver requires an existing right, a knowledge of its existence, and an actual intention to relinquish it, or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been

---

[92] *See*, R. Doc. 1-2 at ¶ 7.
[93] R. Doc. 1-2 at ¶ 35.
[94] La. R.S. 22:879.
[95] *F & M Mafco, Inc. v. Ocean Marine Contractors, LLC*, 434 F. Supp. 3d 428, 438 (E.D. La. 2020) (quoting *Arceneaux v. Amstar Corp.*, 2010-2329, p. 18 (La. 7/1/11), 66 So. 3d 438, 450; *Steptore v. Masco Const. Co.*, 93-2064, p. 4 (La. 8/18/94), 643 So. 2d 1213, 1216)).

relinquished."[96]   "[T]he party asserting waiver bears the burden of proving it."[97] LaFontaine's waiver claim fails as a matter of law because she has alleged that Mass Mutual calculated the COLA Rider benefit increases under its own interpretation and that Mass Mutual "unilaterally, without explanation . . . correct[ed] its mistake in its September 18, 2019 letter."[98]   Thus, LaFontaine has failed to show Mass Mutual's "actual intention to relinquish" a right or "conduct so inconsistent with the intent to enforce the right."[99]   In fact, LaFontaine's allegations support the contrary position: Mass Mutual repeatedly informed her that the September 18, 2019 letter contained an erroneous interpretation of the Policy and that Mass Mutual intended to enforce its rights going forward.[100]   Consequently, LaFontaine has failed to state a plausible claim for waiver.

### iii.   Estoppel

In Louisiana, "Equitable estoppel cannot be used to enlarge or extend coverage of an insurance policy beyond that set forth in the policy."[101]   Applying Louisiana law, the Fifth Circuit has held that, "an insurer's '[c]onduct in paying one claim under a policy does not prevent the insurer from raising defenses to the policy.'"[102]   The Fifth Circuit has also "reasoned that evidence of oral statements to support a claim for

---

[96] *Id.* (internal quotation marks omitted).
[97] *Id.* (citing *Gunderson v. F.A. Richard & Assocs.*, 2009-1498, p. 16 (La. App. 3d Cir. 6/30/10), 44 So. 3d 779, 790).
[98] R. Doc. 1-2 at ¶ 31.
[99] *See F & M Mafco*, 434 F. Supp. 3d at 438.
[100] R. Doc. 1-2 at ¶ 31.
[101] *Tate v. Charles Aguillard Ins. & Real Est., Inc.*, 494 So. 2d 1240, 1242 (La. App. 3 Cir. 1986), *aff'd*, 508 So. 2d 1371 (La. 1987).
[102] *Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 270 (5th Cir. 2003) (quoting *F.D.I.C. v. Duffy*, 47 F.3d 146, 150 (5th Cir. 1995)).

detrimental reliance were not admissible."[103]  Finally, the Fifth Circuit has held that "Louisiana law bars parol evidence . . . where the contract is unambiguous and where a merger clause confirms the intent of the parties that the contract be a fully integrated document."[104]

Under the foregoing authority, the September 18, 2019 letter and the alleged oral statements of Mass Mutual's agent, Xavier Angel, are inadmissible to support a claim of estoppel because estoppel cannot be used to enlarge or expand insurance coverage.  Moreover, because this Court previously found that the COLA Rider in the Policy is unambiguous, LaFontaine is barred from basing an estoppel argument on parol evidence.  Consequently, LaFontaine has failed to state a plausible claim for estoppel.

### D. Statutory Claims and Penalties.

LaFontaine also asserts claims for penalties under La. R.S. 22:1964, La. R.S. 22:1821, and La. R.S. 22:1973.[105]  As an initial matter, LaFontaine's claim under La R.S. 22:1964 must be dismissed because that statute does not authorize a private cause of action.[106]  Additionally, LaFontaine's claims under 22:1821 and 22:1973 are mutually exclusive.  Louisiana Revised Statute 22:1821 applies to "claims arising

---

[103] *Bank of Louisiana v. Aetna U.S. Healthcare, Inc.*, 571 F. Supp. 2d 728, 736 (E.D. La. 2008), *aff'd*, 326 Fed.Appx. 321 (5th Cir. 2009) (citing *Condrey v. SunTrust Bank of Georgia*, 429 F.3d 556, 566 (5th Cir. 2005)).

[104] *Condrey*, 429 F.3d at 566.

[105] R. Doc. 1-2 at ¶¶ 37-39.

[106] *Riley v. Transamerica Ins. Grp. Premier Ins. Co.*, 923 F. Supp. 882, 888 (E.D. La. 1996), *aff'd sub nom. Riley v. TIG Ins. Co.*, 117 F.3d 1416 (5th Cir. 1997) (citing *Clausen v. Fid. & Deposit Co. of Maryland*, 95-0504, p. 4 (La. App. 1 Cir. 8/4/95), 660 So. 2d 83, 86; *Jones v. Americas Ins. Co.*, 2016-0904, p. 9 (La. App. 1 Cir. 8/16/17), 226 So. 3d 537, 544).

under the terms of health and accident contracts."[107]   Conversely, La. R.S. 22:1973

provides that, "The provisions of this Section shall not be applicable to claims made

under health and accident insurance policies."[108]

By its express terms, La. R.S. 22:1973 does not apply "to claims made under

health and accident insurance policies."[109]   "Health and accident" insurance includes

"[i]nsurance of human beings against bodily injury, disablement, or death by accident

or accidental means, or the expense thereof, or against disablement, or expense

resulting from sickness or old age, including insurance wherein the benefits are

covered at a higher level when health care is received from a defined network of

health care providers."[110]   Thus, the statute does not apply to the Policy at issue in

this case because a "Disability Income Policy" insures human beings against bodily

injury.[111]   As such, LaFontaine has failed to state a viable claim under La. R.S.

22:1973, and the claim must be dismissed.

LaFontaine's claim for penalties under La. R.S. 22:1821 must likewise be

dismissed.   The statute provides, in pertinent part, that, "All claims arising under

the terms of health and accident contracts issued in this state . . . shall be paid not

more than thirty days from the date upon which written notice and proof of claim . .

. are furnished to the insurer unless just and reasonable grounds . . . exist."[112]   Here,

---

[107] La. R.S. 22:1821(A).
[108] La. R.S. 22:1973(D).
[109] La. R.S. 22:1973(D).
[110] La. R.S. 22:47(2)(a).
[111] *See Watson v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, Civ. A. No. 14-1312, 2015 WL 5714635, at *6 (E.D. La. Sept. 29, 2015).
[112] La. R.S. 22:1821(A).

Lafontaine lists various "acts and omissions" by Mass Mutual in the Petition,[113] but does not allege that Mass Mutual failed to pay a claim under the Policy within 30 days' written notice thereof.   Louisiana courts addressing similar statutes, which provide for penalties for failing to timely pay a claim after receiving satisfactory proof of loss when the failure to pay is arbitrary, capricious, or without probable case, have held that a plaintiff may only recover under such statutes if there is a valid, underlying, substantive claim upon which insurance coverage is based.[114]   "The penalties authorized by these statutes do not stand alone; they do not provide a cause of action against an insurer absent a valid, underlying insurance claim."[115]  The Court has already determined that Lafontaine has failed to allege any plausible claims against Mass Mutual in the Petition.  Accordingly, her claim for penalties under La. R.S. 22:1821 must be dismissed.

### E.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Judgment on the Pleadings[116] is **GRANTED**.  Plaintiff's claims against Mass Mutual are hereby **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, August 20, 2021.

**WENDY B. VITTER**
**United States District Judge**

---

[113] R. Doc. 1-2 at ¶ 39.
[114] *Pelle v. Munos*, 2019-0549, p. 16 (La. App. 1 Cir. 2/19/20), 296 So. 3d 14, 25 (*citing* La. R.S. 22:1973; La. R.S. 22:1892; *Clausen v. Fidelity and Deposit Co. of Maryland*, 95-0504 (La. App. 1 Cir. 8/4/95), 660 So. 2d 83, 85).
[115] *Pelle*, 2019-0549 at p. 16, 296 So. 3d at 25 (citing *Clausen*, 95-0504, 660 So. 2d at 85).
[116] R. Doc. 20.